ELECTRONICALLY
FILED
Jun 09 2022
U.S. DISTRICT COURT
Northern District of WV

**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF WEST VIRGINIA**
**CLARKSBURG DIVISION**

KALA BRAY,

    Plaintiff,

v.

UNITED STATES OF AMERICA
and TERRY MILLER,

    Defendants.

: : : : : : : : : : : : : :

Civil Action No. **5:22-CV-147 (Bailey/Mazzone/Prince)**

**FEDERAL TORT CLAIMS ACT &**
**FEDERAL CIVIL RIGHTS ACT**
**COMPLAINT**

## COMPLAINT FOR DAMAGES

NOW COMES Kala Bray (hereafter "Plaintiff" or "Ms. Bray") and files this Action against

the United States of America (hereafter "United States" or "Defendant") on claims of negligence,

assault, battery, false imprisonment, and intentional infliction of emotional distress pursuant to 28

U.S.C. § 1346 et seq. (Federal Tort Claims Act) and claims against Terry Miller (hereafter

"Miller") for United States Constitutional Violations under *Bivens v. Six Unknown Named Agents*,

403 U.S. 388 (1971) (Bivens) as follows:

## PARTIES

*Plaintiff*

1.

Ms. Bray is a twenty-nine (29) year old female. She was arrested and convicted in 2012.

Despite her status as a non-violent, first-time offender she was sentenced to 14 years of

incarceration and remanded into the custody of the Federal Bureau of Prisons (hereafter "BOP")

where she was eventually transferred to FCI Hazelton located in Bruceton Mills, West Virginia.

1

(hereafter "FCI-H"). While incarcerated at FCI-H, Defendant Miller sexually assaulted Ms. Bray multiple times.

*Defendants*

2.

Defendant United States of America is a sovereign nation subject to liability and damages for the wrongful conduct of its employees and agencies under the Federal Tort Claims Act. The United States may be served with process pursuant to Fed. R. Civ. Pro. 4(i)(1) as follows:

William J. Ihlenfeld, II or designee
United States Attorney, Northern District of West Virginia
Frederick P. Stamp, Jr. Federal Building
1125 Chapline Street, Suite 3000
Wheeling, West Virginia 26003

*Certified mail copy to*:

Civil Division Process Clerk
United States Attorney's Office, Northern District of West Virginia
320 W. Pike Street
Clarksburg, West Virginia 26301

Mr. Merrick B. Garland
Attorney General of the United States
U.S. Department of Justice
950 Pennsylvania Avenue, NW
Washington, D.C. 20530

3.

Defendant Miller is a resident of the State of West Virginia who was employed by the BOP as a correctional officer working at FCI-H acting under the color or scope of federal law at the time these claims occurred. Defendant Miller sexually assaulted Ms. Bray multiple times.

4.

FCI-H wardens, associate wardens, executive staff, department heads, supervisors, counselors, professional service providers and prison management (hereafter "FCI-H Management

2

Team") were grossly negligent in the management, supervision and retention of male correctional officers at FCI-H engaged in the sexual harassment and abuse of female inmates.

5.

The Special Investigative Services Unit ("SIS") assigned to FCI-H was responsible to investigate any alleged criminal activity involving staff members or inmates. SIS members were grossly negligent and derelict in their duties to manage, supervise and investigate male officers at FCI-H engaged in the sexual harassment and abuse of female inmates.

6.

The Office of Internal Affairs ("OIA"), the Office of Inspector General ("OIG"), the U.S. Department of Justice ("DOJ") and many other special agents and supervisory attorneys were responsible for the investigation and prosecution of male correctional officers sexually abusing female inmates at FCI-H. These agencies failed to timely investigate and prosecute the criminal activity perpetrated by the male correctional officer identified below. (SIS, OIA, OIG and DOJ are collectively referred to herein as the "Prison Investigative Agencies").

## JURISDICTION AND VENUE

7.

This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. §§ 1331 & 1346. Specifically, Ms. Bray brings her claims under 28 U.S.C. § 1346 as it involves liability of the United States of America reserved to federal courts and over the claims against Defendant Miller for violations of the United States Constitution pursuant to 28 U.S.C. § 1331.

8.

3

This Court has personal jurisdiction over Defendant United States of America pursuant to 28 U.S.C. § 1346 et seq. (Federal Tort Claims Act) and over Defendant Miller for committing United States Constitutional violations within the State of West Virginia.

9.

Venue is proper in this Court pursuant to 28 U.S.C. § 1402(b) as the acts and omissions set forth herein occurred within this federal judicial district.

## FEDERAL BUREAU OF PRISONS

10.

The Federal Bureau of Prisons ("BOP") is a United States federal law enforcement agency responsible for the custody of individuals who have violated federal laws.  The BOP's stated mission is to "protect public safety by ensuring that federal offenders serve their sentences of imprisonment in facilities that are safe, humane, cost efficient and appropriately secure…"[1]  The BOP employs over 35,000 individuals at 122 institutions across the country.  The BOP is currently responsible for the custody and care of over 13,000 female inmates incarcerated at 27 separate BOP facilities.

11.

Despite its stated mission, the BOP has created and maintained a sanctuary for correctional officers to sexually assault and abuse female inmates. The sexual abuse at these prisons is rampant but goes largely unchecked as a result of cultural tolerance, orchestrated cover-ups and organizational reprisals of inmates who dare to complain or report sexual abuse.

12.

---

[1] https://www.bop.gov/about/agency/ (emphasis added).

This systemic misconduct within the BOP was the subject of a recent U.S. House of Representatives investigation for the Committee on Oversight and Government Report. The nine-page report concluded that misconduct by prison officials is "largely tolerated or ignored altogether"[2] allowing officials to operate outside of the rules. The committee reviewed specific cases where "individuals deemed responsible for misconduct were shuffled around, commended, awarded, promoted or even allowed to retire with a clean record and full benefits before any disciplinary action could apply."[3]

## PRISON RAPE ELIMINATION ACT

### 13.

The Prison Rape Elimination Act ("PREA") was signed into law by President Bush in 2003 and applies to all federal facilities managed by the BOP. P.L. 108-79. PREA's goal is to deter the sexual assault of prisoners and to curb prison rape through a zero-tolerance policy.

### 14.

Because the female inmates are fully dependent on the correctional officers for basic necessities and privileges, all sexual contact, with or without the consent of the inmate, is classified as abuse. Sexual abuse and sexual harassment are defined in section 115.6 of the Act as follows:

*Sexual abuse* of an inmate, detainee, or resident by a staff member, contractor, or volunteer includes any of the following acts, *with or without consent* of the inmate, detainee, or resident:

*(1) Contact between the penis and the vulva or the penis and the anus, including penetration, however slight;*

*(2) Contact between the mouth and the penis, vulva, or anus;*

---

[2] https://republicans-oversight.house.gov/wp-content/uploads/2019/01/Memo-to-Chairman-Russell-re-BOP.pdf
[3] *Id.*

*(3) Contact between the mouth and any body part where the staff member, contractor, or volunteer has the intent to abuse, arouse, or gratify sexual desire;*

*(4) Penetration of the anal or genital opening, however slight, by a hand, finger, object, or other instrument, that is unrelated to official duties or where the staff member, contractor, or volunteer has the intent to abuse, arouse, or gratify sexual desire;*

*(5) Any other intentional contact, either directly or through the clothing, of or with the genitalia, anus, groin, breast, inner thigh, or the buttocks, that is unrelated to official duties or where the staff member, contractor, or volunteer has the intent to abuse, arouse, or gratify sexual desire;*

*(6) Any attempt, threat, or request by a staff member, contractor, or volunteer to engage in the activities described in paragraphs (1)-(5) of this section;*

*(7) Any display by a staff member, contractor, or volunteer of his or her uncovered genitalia, buttocks, or breast in the presence of an inmate, detainee, or resident, and*

*(8) Voyeurism by a staff member, contractor, or volunteer.*

*Sexual harassment includes*

*(1) Repeated and unwelcome sexual advances, requests for sexual favors, or verbal comments, gestures, or actions of a derogatory or offensive sexual nature by one inmate, detainee, or resident directed toward another; and*

*(2) Repeated verbal comments or gestures of a sexual nature to an inmate, detainee, or resident by a staff member, contractor, or volunteer, including demeaning references to gender, sexually suggestive or derogatory comments about body or clothing, or obscene language or gestures.*

PREA Standards § 155.6, http://www.prearesourcecenter.org/standard/115-6  (emphasis added).

15.

As mandated by PREA, the BOP conducts annual PREA audits ("Audits") at each federal prison facility. The annual Audits for FCI-H are materially incomplete as the auditors failed to interview any female inmates that were involved in or witness to PREA violations.

16.

The reports suggest that these female inmates were not available for interview as they had been transferred to another prison facility.  The failure to interview victims of PREA violations

6

undermines the Audit results and incentivizes FCI-H to transfer victims of sexual abuse rather than cooperate with a thorough PREA investigation.  By transferring victims of sexual abuse, FCI-H shields itself from legitimate investigation and suppresses complaints by punishing the victims.

17.

The FCI-H transfer policy also demonstrates the BOP's failure to put the rights of the victims ahead of its own economic interest.  Before any BOP employee can be punished, transferred or reassigned for sexual abuse, administrators must carefully navigate the collective bargaining agreement.  In almost every instance, the collective bargaining rights of the employees outweigh the rights of the victim and it is the victim that receives the full weight of punishment by transfer to another facility or other punitive measures.  In no other context are the rights of the sexually abused subordinated to the economic interests of the institution and the collective bargaining rights of the abusers.

**FCI-H**

18.

FCI-H is a federal prison facility operated by the BOP through the United States Department of Justice.

19.

Female inmates at FCI-H are segregated into distinct housing units with dormitory style cubicles for each inmate.  Many inmates are afforded work, educational and vocational privileges within the complexes.  Inmates are subject to daily "counts" but are given some basic freedoms to move and work on the complex.

20.

7

FCI-H employs correctional officers, facilities staff and management to oversee and operate the prison facility. The correctional officers are trained, managed, overseen and paid by the BOP through the United States Department of Justice serving "investigative or law enforcement" functions. The correctional officers are federal employees subjecting the United States of America to liability for improper actions committed within the course and scope of their employment, under color of federal law, or in violation of specific federal statutes.

21.

Defendant Miller was a known sexual predator to the FCI-H Management Team and the Prison Investigative Agencies. Upon information and belief, Defendant Miller had been investigated on numerous occasions for sex crimes against female inmates. The FCI-H Management Team and Prison Investigative Agencies were well aware of the female inmates' reluctance to come forward with information on sexual abuse for fear of reprisal, including, but not limited to, transfer to a different facility, disciplinary segregation, loss of early release rights, detrimental write-ups, loss of work privileges, and interference with vocational skills programs.

22.

In fact, the FCI-H Management Team instituted a policy whereby inmates complaining of mistreatment by prison officials were removed to a local county detention center or a special housing unit. This relocation policy intentionally suppressed complaints of misconduct as the county facilities are higher levels of security and do not permit work details or vocational training.

23.

Despite the known issues of abuse, the FCI-H Management Team granted Defendant Miller unrestricted and unsupervised contact with Plaintiff including work details which granted him one on one access. Defendant Miller abused his position of authority to threaten and coerce Plaintiff

into engaging in sexual activities and keep the abuse quiet for fear of immediate retaliation. Defendant Miller used his access to personal history files, telephone call recordings, and personal emails giving him additional leverage—beyond what he already has—to extract sexual favors and threaten the safety of Plaintiff.

## ACCESS TO COUNSEL

24.

FCI-H maintains a system of checks and balances that makes access to competent counsel virtually impossible for female inmates that are victims of sexual abuse.

25.

First, Defendant Miller threatened Plaintiff with direct and immediate retaliation in the event Plaintiff reported any instances of sexual abuse including time in the special housing unit, loss of privileges, removal from work detail, and write "ups."    Defendant Miller reviewed Plaintiff's confidential prison files, emails and recorded telephone conversations to intimidate Plaintiff as part of his psychological coercion.  Additionally, Plaintiff observed many examples of punishments handed out to other inmates that challenged or reported abuse by prison officials. Because of the dependency of the officer/inmate relationship for basic necessities and privileges as identified in PREA, any threats of retaliation were magnified, and Plaintiff was unable to safely report the sexual abuse to potential legal counsel in a timely manner.

26.

Second, the FCI-H Management Team introduced a policy of removing any inmate who reported sexual abuse to higher security county prisons or placement in special housing units. Plaintiff observed this policy enforced by the FCI-H Management Team on countless occasions making reporting instances of abuse a significant safety risk.

27.

Third, the FCI-H Management Team monitored all of Plaintiff's telephone and email communications with friends and families, and any mention of sexual abuse was flagged and immediately stamped out.

28.

Fourth, the FCI-H Management Team refused to give Plaintiff access to a secure telephone line to discuss her legal rights with competent legal counsel requiring Plaintiff to use the "open" lines for initial attorney/client interviews that were monitored by prison officials.

29.

It was difficult for Plaintiff to secure counsel and report the instances of sexual abuse through demand letters to the BOP in compliance with the Federal Tort Claims Act.  A true and accurate copy of the initial demand letter to the BOP is attached hereto as Exhibit 1.

30.

Even after formally engaging counsel, attorney-client communication remained difficult as the facility insisted that prison staff be present in the rooms where the calls took place.

**MS. BRAY**

31.

In 2020, Ms. Bray was transferred to the laundry detail at FCI-H under the direct control and supervision of Defendant Miller.  The laundry detail afforded Defendant Miller with one-on-one access to Ms. Bray in designated areas that were not equipped with security cameras.

32.

Mr. Miller began an immediate campaign of harassment by making unwanted and sexually suggestive comments and statements to Ms. Bray.  He frequently referred to her as a "hoe" or

"whore," discussed sexual activities he would like to perform with her, and openly discussed details of her underlying charges that he obtained by reviewing her file.  This conduct quickly escalated into unwanted touching and grabbing of her butt and breasts during work hours, and he threatened that he would "catch" her alone in the laundry area.

33.

Mr. Miller made good on his threat.  In July 2020, Defendant Miller trapped Ms. Bray alone in one of the laundry offices and locked the door behind him.  He started kissing her mouth and neck and started removing her clothes.  He shoved his fingers roughly inside her vagina (bruising her inner thighs and damaging the vaginal opening and vagina) and then forced her down onto her knees where he removed his penis from his pants and shoved it into her mouth while he was sitting down on a chair.  He grabbed the back of her neck and demanded that she "suck his dick" while violently shoving her head up and down injuring her neck muscles.  He called her a "dirty little bitch."  He ejaculated into his hand and discarded the evidence.  This event was witnessed by another inmate through a small window in the door.  The witness even became concerned that Miller's shoving of Ms. Bray's neck caused her a neck injury.

34.

Several days later, Defendant Miller again trapped Ms. Bray in an office in the laundry area.  Defendant Miller stated that this time "I want to fuck you" and ordered her to take off her pants and sit on the nearby desk.  Ms. Bray begged Defendant Miller not to rape her and instead offered to "suck his dick" to avoid a vaginal rape.  Defendant Miller again shoved his fingers into Ms. Bray's already-injured vagina.  Defendant Miller relented and forced Ms. Bray to perform oral sex on him for a second time.  He again ejaculated into his hand to dispose the evidence.


35.

Ms. Bray was too afraid to report these instances of sexual abuse and instead reached out to a local attorney for assistance by writing a letter and placing same in an envelope marked "legal." Within a few weeks, Ms. Bray was handcuffed by staff and led to an office with two men that identified themselves as Department of Justice officials. These men informed Ms. Bray that her legal letter had been intercepted by SIS and proceeded to interrogate her about the incidents described in her letter. Ms. Bray did not consent or give permission to Defendant Miller to touch her or engage in any sexual activity, nor could she have, as a matter of law. As a result of the sexual assaults and harassment from Defendant Miller, Ms. Bray has suffered extensive psychological trauma, depression, pain and suffering, physical trauma and is in constant fear of being trapped alone with another abusive officer.

## COUNT I

### NEGLIGENCE

**(Defendant United States of America)**

36.

Plaintiff incorporates by reference the allegations set forth in paragraphs 1-35 of this Complaint for Damages as if fully set forth herein.

37.

The FCI-H Management Team and the Prison Investigative Agencies owed a duty to Plaintiff while incarcerated at FCI-H to "protect public safety by ensuring that federal offenders serve their sentences of imprisonment in facilities that are <u>safe</u>, <u>humane</u>, cost efficient and appropriately <u>secure</u>"[4] as mandated by the BOP.

---

[4] https://www.bop.gov/about/agency/ (emphasis added).

38.

The FCI-H Management Team and the Prison Investigative Agencies breached their duties to Plaintiff by negligently supervising, managing and retaining Mr. Miller during Plaintiff's incarceration at FCI-H.

39.

The FCI-H Management Team and the Prison Investigative Agencies breached their duties to Plaintiff by providing Mr. Miller with <u>unrestricted</u> and <u>unsupervised</u> one-on-one access to Plaintiff while incarcerated at FCI-H despite knowledge of Mr. Miller's past sexual abuse and harassment of female inmates.

40.

The FCI-H Management Team and the Prison Investigative Agencies breached their duties to Plaintiff by creating a system where victims of sexual abuse and harassment are punished for reporting the sexual misconduct of prison staff by transfer to more secure facilities, removal from educational and vocational programs, placement in special housing units, loss of early release rights, detrimental write-ups and loss of work privileges.

41.

The FCI-H Management Team and the Prison Investigative Agencies breached their duties to Plaintiff under PREA as follows:

- Section 115.11 – failing to enforce zero tolerance policy
- Section 115.13 – failing to supervise and monitor (video surveillance) one-on-one inmate/officer contact
- Section 115.15 – permitting improper cross-gender pat downs
- Section 115.17 – hiring, promoting and retaining officers who "may" have had improper sexual contact
- Section 115.43 – punishing sex victims with involuntary segregated housing, loss of privileges and work permits
- Section 115.61 – failing to report suspicion of sexual abuse
- Section 115.67 – failing to protect inmates from retaliation after reporting abuse

- Section 115.76 – failing to discipline staff for sexual misconduct

42.

As a direct and proximate cause of the negligence outlined above, the FCI-H Management Team and the Prison Investigative Agencies caused damage to Plaintiff including psychological trauma, emotional distress, depression, physical trauma and pain and suffering.

43.

Plaintiff is entitled to damages from the United States of America under the Federal Tort Claims Act for the negligence of the FCI-H Management Team and the Prison Investigative Agencies in an amount to be determined at trial.

## COUNT II

## ASSAULT AND BATTERY

**(Defendant United States of America)**

44.

Plaintiff incorporates by reference the allegations set forth in paragraphs 1-43 of this Complaint for Damages as if fully set forth herein.

45.

Mr. Miller, acting within the course and scope of his employment with the BOP as an investigative or law enforcement official, under color of federal law and in violation of 28 U.S.C. § 2680 engaged in the intentional assault and battery of Plaintiff, through unwanted, non-consensual sexual abuse and harassment as detailed in paragraphs 31-35 herein.  Mr. Miller caused damage to Plaintiff including psychological trauma, emotional distress, depression, physical trauma and pain and suffering for which the United States of America is liable under the Federal Tort Claims Act in an amount to be determined at trial.

## COUNT III

### FALSE IMPRISONMENT

**(Defendant United States of America)**

46.

Plaintiff incorporates by reference the allegations set forth in paragraphs 1-45 of this Complaint for Damages as if fully set forth herein.

47.

Mr. Miller, acting within the course and scope of his employment with the BOP as an investigative or law enforcement official, under color of federal law, and in violation of 28 U.S.C. § 2680 falsely imprisoned and deprived Plaintiff of her liberty and freedom against her will and consent, without legal authority or necessity, and for the sole purpose of engaging in non-consensual sexual abuse and harassment as detailed in paragraphs 31-35 herein. Mr. Miller caused damage to Plaintiff including psychological trauma, emotional distress, depression, physical trauma and pain and suffering for which the United States of America is liable under the Federal Tort Claims Act in an amount to be determined at trial.

## COUNT IV

### INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS

**(Defendant United States of America)**

48.

Plaintiff incorporates by reference the allegations set forth in paragraphs 1-47 of this Complaint for Damages as if fully set forth herein.

49.

Mr. Miller, acting within the course and scope of his employment with the BOP as an investigative or law enforcement official, under color of federal law and in violation of 28 U.S.C.

§ 2680 engaged in the intentional infliction of emotional distress of Plaintiff through unwanted, non-consensual sexual abuse and harassment as detailed in paragraphs 31-35 herein. Mr. Miller's conduct was (1) intentional and reckless with knowledge that emotional distress would likely result, (2) outrageous and went beyond all bounds of decency to be tolerated in a civilized community, (3) the direct and proximate cause of the emotional distress endured by Plaintiff, and (4) severe and damaging for which the United States of America is liable under the Federal Tort Claims Act in an amount to be determined at trial.

## COUNT V

### CONSTITUTIONAL VIOLATIONS AND BIVENS CLAIMS

**(Defendant Miller)**

50.

Plaintiff incorporates by reference the allegations set forth in paragraphs 1-49 of this Complaint for Damages as if fully set forth herein.

51.

Mr. Miller acting under color of federal law as a prison guard for the BOP violated Amendment Eight to the United States Constitution by subjecting Plaintiff to "cruel and unusual" punishment while incarcerated by the United States of America engaging in sexual harassment, sexual abuse, false imprisonment, and intentional infliction of emotional distress as outlined in paragraphs 31-35 herein.

52.

Mr. Miller acting under color of federal law as a prison guard Violated Amendment Five of the United States Constitution by denying Plaintiff her "due process" and "equal protection" rights under the law by engaging in sexual harassment, sexual abuse, false imprisonment, and intentional infliction of emotional distress as outlined in paragraphs 31-35 herein.

16

53.

Plaintiff is entitled to compensatory and punitive damages from Defendant Miller including damages for psychological trauma, emotional distress, depression, physical trauma, pain and suffering and personal injury in amounts to be determined at trial.

## FEDERAL TORT CLAIMS ACT ADMINISTRATIVE PROCESS

54.

a) Plaintiff, through counsel, filed SF-95 with the Federal of Prisons.

b) Additional information

    a. Type of written claim filed: Claim for Damage, Injury, or Death

    b. Date your claim was filed: August 20, 2021

    c. Amount of monetary damages requested in your claim: $645,000

    d. Written acknowledgement from DOJ received

        i. Date of written acknowledgement: September 22, 2021

        ii. Claim number: TRT-MXR-2021-07517

c) No other SF-95 forms are required.

d) Not applicable.

e) BOP did not respond to Ms. Bray's claim, nor did it offer a settlement.

**WHEREFORE**, Plaintiff requests that the Court:

1) Grant judgment in favor of Plaintiff on her claims for Negligence, Assault and Battery, False Imprisonment, and Intentional Infliction of Emotional Distress against Defendant United States of America;

17

2) Grant judgment in favor of Plaintiff on her claims for Constitutional Violations against Mr. Miller;

3) Award damages to Plaintiff in amounts to be determined at trial;

4) Grant Plaintiff a jury trial on all claims triable by jury;

5) Grant Plaintiff her fees, expenses and attorneys' fees involved in prosecuting this action;

6) Grant Plaintiff her costs as a prevailing party;

7) Grant Plaintiff prejudgment and postjudgment interest in accordance with applicable law; and

8) Grant such other and further relief the Court deems just and proper.


Respectfully submitted,

**KALA BRAY**

By counsel


/s/ David R. Stone, II
David R. Stone, II
(W. Va. Bar No. 12824)
DINSMORE & SHOHL LLP
215 Don Knotts Boulevard
Suite 310
Morgantown, WV 26501
(304) 225-1444
(304) 296-6116 (f)
david.stone@dinsmore.com

**Bryan E. Busch** (*Pro Hac Vice to be sought)*
Georgia Bar No. 006055
bb@buschmills.com
BUSCH MILLS & SLOMKA, LLP
6400 Powers Ferry Road, Suite 391
Atlanta, Georgia 30339
(404) 800-4062 (Telephone)